UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**OPINON & ORDER**

PHILIPPE BUHANNIC,

Plaintiff,

– *against* –

TRADINGSCREEN INC, PIERRE
SCHROEDER, PIERO GRANDI, FRANK
PLACENTI, ROBERT TRUDEAU, JAY HOAG,
RICK KIMBALL, BRUCE ROSENTHAL,
PETER NEGER, JOHN VASSOS, STEPHEN
RADIN, *and* DAVID POLAK,

Defendants.

19 Civ. 10650 (ER)

PHILIPPE BUHANNIC *and*
TRADINGSCREEN SHAREHOLDERS
ASSOCIATION,

Plaintiffs,

– *against* –

TRADINGSCREEN INC, PIERRE
SCHROEDER, PIERO GRANDI, FRANK
PLACENTI, ROBERT TRUDEAU, TCI VI,
L.P., *and* TCV MEMBER FUND L.P.,

Defendants.

20 Civ. 3421 (ER)

PHILIPPE BUHANNIC,

Plaintiff,

– *against* –

TRADINGSCREEN INC, PIERRE
SCHROEDER, PIERO GRANDI, FRANK
PLACENTI, ROBERT TRUDEAU, TCI VI,
L.P., TCV MEMBER FUND L.P., JAY HOAG,
*and* RICK KIMBALL,

Defendants.

20 Civ. 4671 (ER)

RAMOS, D.J.:

Phillipe Buhannic, a French citizen resident in Switzerland, founded TradingScreen Inc. with his brother and one other man in 1999.  TradingScreen, a Delaware corporation with a principal place of business in New York, provides financial technology services.  Buhannic served as chief executive officer ("CEO") of the company until July 2016, when he was terminated by the board of directors.[1]  In the four years since his termination, Buhannic has filed — first through counsel and now *pro se* —an arbitration before the American Arbitration Association ("AAA"), a lawsuit in the Supreme Court of New York, and sixteen matters in this District, including twelve before this Court.[2]  He has unsuccessfully petitioned the Supreme Court of the United States for writs of mandamus against the New York Supreme Court, the Second Department of the New York Supreme Court's Appellate Division, and this Court.

The defendants[3] in one of the matters that remains pending — *Buhannic v. TradingScreen Inc.*, No. 19 Civ. 10650 (ER) — move to dismiss the complaint and enjoin Buhannic from filing further lawsuits in this District based on his termination as CEO and subsequent disputes regarding stock ownership and compensation.  Buhannic moves the Court to recuse itself from this case.  The Court GRANTS the defendants' motions and DENIES Buhannic's.  It additionally *sua sponte* dismisses two other cases brought by Buhannic, Nos. 20 Civ. 4671 and 20 Civ. 3421, for lack of subject matter jurisdiction.

---

[1] Buhannic remains a shareholder and member of the board of directors.

[2] He has additionally attempted to remove two actions from New York Supreme Court to the Southern District — unsuccessfully.

[3] Pierre Schroeder is the current CEO of TradingScreen and a member of TradingScreen's board of directors.  Schroeder is a citizen of Luxembourg and a resident of Spain.  Vassos Decl. Ex. 10 ¶ 19.  Piero Grandi is the chairman of TradingScreen's board of directors.  Grandi is an Italian citizen and a Swiss resident.  Frank Placenti and Robert Trudeau are also directors of TradingScreen; Trudeau is also a General Partner of TCV, one of TradingScreen's investors.  Jay Hoag and Rick Kimball are Managing Partners at TCV.  John Vassos, Peter Neger, Timothy Stephens, Stephen Radin, and David Pollak all serve or have served as attorneys to one of the defendants.

## I.       BACKGROUND

Soon after he was terminated as CEO of TradingScreen in July 2016, Buhannic,
represented by counsel, filed an arbitration against TradingScreen and its directors before
the AAA to affirm the validity of certain amendments he had attempted to make to an
agreement among the founders of TradingScreen that affected the composition of the
board of directors.  *See Buhannic v. TradingScreen Inc.*, No. 17 Civ. 7993 (ER), 2018 WL
3611985, at *1–2 (S.D.N.Y. July 27, 2018) (dismissing petition to confirm the
arbitration).  At approximately the same time, Buhannic filed a lawsuit also against
TradingScreen and its directors in the Supreme Court for the State of New York, alleging
breach of contract and wrongful termination.  *See Buhannic v. Tradingscreen Inc.*, No.
653624/2016 (N.Y. Sup. Ct. filed July 11, 2016).  The panel of arbitrators unanimously
granted a partial award to TradingScreen a year later, in July 2017.  2018 WL 3611985, at
*3.  In October, Buhannic, proceeding *pro se*, filed a petition before this Court under the
Federal Arbitration Act seeking to vacate the partial award.  *See* Petition, *Buhannic v.
TradingScreen Inc.*, No. 17 Civ. 7993 (ER) (S.D.N.Y. Oct. 17, 2017), Doc. 1.

Five months after filing his petition, Buhannic initiated a second lawsuit before
this Court, *pro se*, against the AAA, the arbitrators of his panel, TradingScreen, officers
and directors of TradingScreen, TradingScreen's corporate counsel, TradingScreen's
auditor, a private equity firm that had invested in TradingScreen, managing partners of
that firm, Buhannic's former attorneys, and a vice chancellor of the Delaware Court of
Chancery that had presided over related litigation brought by TradingScreen in 2016.  *See*
Complaint, *Buhannic v. American Arbitration Association*, No. 18 Civ. 2430 (ER)
(S.D.N.Y. Mar. 19, 2018), Doc. 1.  The complaint in that case alleged a sprawling
conspiracy among the defendants to remove Buhannic as CEO of TradingScreen and steal
his ownership interest in the company.

Soon after filing that lawsuit, Buhannic, *pro se*, attempted to remove a fee dispute
with former attorneys from the Supreme Court of New York to this District.  *See* Notice

of Removal, *Shiboleth L.L.P. v. Buhannic*, No. 18 Civ. 2585 (RJS) (S.D.N.Y. Mar. 23, 2018), Doc. 1.  Then-District Judge Sullivan remanded the case a month later for failure to establish subject matter jurisdiction.  *See* Order, *id.* (Apr. 25, 2018), Doc. 4, *reconsideration denied*, Order, *id.* (June 4, 2018), Doc. 7, *appeal dismissed*, 779 Fed. App'x 57 (2d Cir. 2019).

In total, Buhannic was represented by four sets of attorneys in the New York litigation.  *See* Stip. of Substitution of Counsel, No. 653624/2016 (Oct. 3, 2016), Doc. 34; Proposed Order to Show Cause, No. 653624/2016 (Apr. 20, 2017), Doc. 169; Proposed Order to Show Cause, No. 653624/2016 (Nov. 21, 2017), Doc. 279.  His final attorney withdrew in May 2018 after the presiding justice, Justice Friedman, sanctioned Buhannic for advancing frivolous arguments while *pro se* and threatened to do the same to the attorney if the attorney allowed such arguments to be made in the future.  Tr. – So Ordered at 54, No. 653624/2016 (June 8, 2018), Doc. 412 (transcript of May 15, 2018 hearing); Proposed Order to Show Cause, No. 653624/2016 (May 16, 2018).  Buhannic has proceeded *pro se* in all matters since that time.

Buhannic filed four lawsuits in the Southern District during the month of June 2018.  On June 14, Buhannic filed two actions, Nos. 18 Civ. 5371 and 18 Civ. 5372, against TradingScreen and its officers, directors, and investors, alleging matters substantially similar to those originally brought before Justice Friedman.  Both were assigned to this Court.  Then, on June 25, Buhannic filed *Buhannic v. Friedman*, No. 18 Civ. 5729, suing Justice Friedman before Judge Abrams for violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution based on discrimination due to his national origin.  Finally, on June 28, Buhannic initiated *Buhannic v. Shiboleth LLC*, No. 18 Civ. 5846, alleging that his former attorneys had deliberately overbilled him and were engaged in a racketeering conspiracy.  That case was assigned to Judge Gardephe.

4

In July 2018, this Court denied Buhannic's petition to vacate the arbitral award issued by the AAA in May 2017 and granted TradingScreen's cross-motion to confirm it. *See Buhannic v. Tradingscreen Inc.*, No. 17 Civ. 7993 (ER), 2018 WL 3611985, at *8 (S.D.N.Y. July 27, 2018).[4]

Buhannic thereafter filed four more lawsuits against TradingScreen and its affiliates in 2018:  No. 18 Civ. 7997 on August 31, No. 18 Civ. 9351 on October 12, No. 18 Civ. 9447 on October 16, and No. 18 Civ. 10170 on November 1.  Like the first two lawsuits filed in June 2018, these four lawsuits each alleged causes of actions based on Buhannic's termination as TradingScreen CEO that were originally raised before Justice Friedman.  These cases were all assigned to this Court.

In February 2019, Buhannic filed another lawsuit in this District, saw one dismissed, and attempted to remove a third to the Southern District.  On February 6, Buhannic sued the clerk of the Second Department of the New York Supreme Court's Appellate Division for discrimination based on national origin.  *Buhannic v. N.Y. Appeal Court 1st District*, No. 19 Civ. 1132 (PGG) (S.D.N.Y. filed Feb. 6, 2019).  That case was assigned to Judge Gardephe.  Next, on February 8, Judge Abrams dismissed Buhannic's case against Justice Friedman, finding that Justice Friedman enjoyed judicial immunity from Buhannic's claims.  *See Buhannic v. Friedman*, No. 18 Civ. 5729 (RA), 2019 WL 481732, at *5 (S.D.N.Y. Feb. 8, 2019).[5]  Finally, on February 11, Buhannic attempted to remove the New York Supreme Court action still pending before Justice Friedman.  *Buhannic v. Tradingscreen Inc.*, No. 19 Civ. 1279 (WHP) (S.D.N.Y. filed Feb. 11, 2019).  Judge Pauley remanded the case a week later, finding that the removal of an action begun in 2016 was likely untimely under 28 U.S.C. § 1446(b) and that Buhannic had no

---

[4] The Second Circuit affirmed the Court's judgment the next year, in October 2018.  *See* 779 F. App'x 52 (2019).

[5] The Second Circuit dismissed Buhannic's appeal of this order in August 2019 because it "lack[ed] an arguable basis either in law or in fact." Mandate, No. 18 Civ. 5729, Doc. 26 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

authority to remove the case given that he was the plaintiff in state court, not the defendant.  *See id.*, Doc. 6.[6]

Two months later, on April 2, 2019, Buhannic filed an action seeking injunctive relief against TradingScreen, ordering it to take certain steps with respect to its corporate governance.  *Buhannic v. Tradingscreen*, No. 19 Civ. 2915 (ER) (S.D.N.Y. filed Apr. 2, 2019).  On April 5, Buhannic filed an affidavit stating that he had shipped via FedEx a copy of a motion to expedite an information demand to attorneys who represent TradingScreen and its affiliates in this group of cases.  *Id.* Doc. 11.  Buhannic has not filed an affidavit attesting to service on TradingScreen of the complaint in that action, and no representative for TradingScreen has appeared.  The case was eventually assigned to this Court.[7]

In August 2019, Justice Friedman dismissed with prejudice the action pending in New York Supreme Court after she found that Buhannic had failed to appear at several scheduled depositions.  No. 653624/2016 (Aug. 9, 2019), Doc. 586.  Buhannic appealed to the Appellate Division the next week.  Notice of Appeal, No. 653624/2016 (Aug. 15, 2019), Doc. 589.  The Appellate Division has yet to issue a decision in the matter.

On September 23, Judge Gardephe dismissed Buhannic's lawsuit alleging a racketeering conspiracy against his former attorneys for failure to state a claim.  No. 18 Civ. 5846 (Sept. 23, 2019), Doc. 32.  Buhannic did not file any opposition to the defendant's motion to dismiss.  Although Judge Gardephe granted Buhannic leave to amend his complaint to cure the noted deficiencies, Buhannic did not do so in a timely manner and Judge Gardephe terminated the case.  *Id.*, Doc. 33.

---

[6] The Second Circuit dismissed Buhannic's appeal from Judge Pauley's order for procedural defects in an Order effective April 16, 2019.  No. 19 Civ. 1279, Doc. 47.

[7] Because the complaint in that case fails to meet the requirements of Federal Rule of Civil Procedure 8(a)(2), the Court dismisses it *sua sponte* via separate Order.

A few days after Judge Gardephe's dismissal order, on September 27, this Court issued an Opinion and Order granting motions to dismiss in five of Buhannic's cases. *Buhannic v. Schroeder*, Nos. 18 Civ. 5371, 5372, 7997, 9351, 9447, 10170, 2019 WL 4735378 (S.D.N.Y. Sept. 27, 2019). It held that, in each case, the Court lacked subject matter jurisdiction because of a lack of complete diversity between Buhannic on one side and TradingScreen and its affiliates on the other. *Id.* at *4. In particular, the Court found that current TradingScreen CEO Pierre Schroeder and chairman Piero Grandi were citizens of foreign states and therefore destroyed diversity jurisdiction, considering that Buhannic, too, is a citizen of a foreign state. *Id.* In that same Opinion and Order, before becoming aware of Justice Friedman's August decision, the Court denied the defendants' motion to dismiss No. 18 Civ. 9351 on grounds of *Colorado River* abstention given the litigation in New York Supreme Court. *Id.*[8] That same day, the Court also dismissed the complaint in 18 Civ. 2430, the racketeering claim against the AAA and others involved with these lawsuits because the AAA and its arbitrators enjoy arbitral immunity and because Buhannic otherwise failed to state a claim. *Buhannic v. American Arbitration Association*, No. 18 Civ. 2430 (ER), 2019 WL 4735005 (S.D.N.Y. Sept. 27, 2019). Even though the Court gave Buhannic until October 18, 2019 to submit an amended complaint, he failed to do so.[9]

Three days after this Court's decision, on September 30, Judge Gardephe dismissed another of Buhannic's cases filed against the First Department of the New York Supreme Court's Appellate Division and its staff. *Buhannic v. N.Y. Appeal Court 1st*

---

[8] In October, Buhannic appealed every aspect of the Court's Order, including the part of its order denying the defendants' motion to dismiss in No. 18 Civ. 9351. The Second Circuit dismissed the appeal in its entirety in April 2020, finding it had no jurisdiction to consider the appeal in No. 18 Civ. 9351 given the lack of a final order and finding that the appeals in the other cases lacked a basis in law or in fact. Doc. 50.

Additionally, the defendants filed a motion to dismiss 18 Civ. 9351 in November on the basis of *res judicata*, given the completed nature of the proceedings before Justice Friedman in New York Supreme Court. That motion is granted by separate Order.

[9] Given Buhannic's failure to file an amended complaint, the Court will terminate this case via separate order.

*District*, No. 19 Civ. 1132 (PGG) (S.D.N.Y. Sept. 30, 2019).  Judge Gardephe found that
the Department itself enjoyed immunity under the Eleventh Amendment to the U.S.
Constitution, the staff enjoyed judicial immunity from damages, and that Buhannic failed
to state a claim for injunctive relief.  *Id.*, slip op. at 17.

   Buhannic filed the first case at issue in this Opinion and Order on November 18,
2019.  *Buhannic v. Tradingscreen Inc.*, No. 19 Civ. 10650 (S.D.N.Y. filed Nov. 18, 2019).
The complaint in this case repeats many of the claims raised in No. 18 Civ. 10170,
namely that he is entitled to the issuance of certain stock in TradingScreen.  Compl. at
ECF p. 2, No. 19 Civ. 10650 (Nov. 18, 2019).  The complaint newly alleges that
TradingScreen unlawfully called and repurchased stock originally owned by Buhannic.
*Id.*  Critically, the complaint names as defendants Schroeder and Grandi, TradingScreen's
CEO and Chairman, whom the Court found were citizens of foreign states for purposes of
determining whether the Court had subject matter jurisdiction.  *Id.* at ECF p. 1.

   In December, Buhannic filed a petition for a writ of mandamus with the U.S.
Supreme Court demanding the recusal of this Court from his cases in this District, a
change of venue to another federal district, and reinstatement of his federal cases against
Justice Friedman.  Pet., *Buhannic v. New York Southern District*, No. 19-775 (U.S. Dec.
13, 2019).[10]  A few days later, Buhannic moved this Court to recuse itself from No. 19
Civ. 10650, alleging that the Court failed to disclose a close relationship with Michael
Bloomberg, the former mayor of New York City and owner of Bloomberg, LLP, a
competitor of TradingScreen.  Notice of OTSC Motion, No. 19 Civ. 10650 (Dec. 17,
2019), Doc. 13.  Buhannic bases this allegation of a relationship with the Court's service
as a volunteer commissioner on the New York City Commission to Combat Police
Corruption before receiving its commission as a federal judge.

---

[10] This petition was denied in February 2020.  *See* 140 S. Ct. 1249 (2020).

Approximately two weeks after filing his motion for recusal, Buhannic filed two additional petitions for writs of mandamus with the U.S. Supreme Court.  In No. 19-934, Buhannic petitioned the Supreme Court to order Justice Friedman to recuse herself from his New York Supreme Court proceedings and to reverse her decisions in the case.  In No. 19-833, Buhannic urged the Court to order the First Department to reverse its previous dismissals of his appeals and to transfer his cases to a federal court.  The Supreme Court denied these petitions in February 2020.  140 S. Ct. 1249 (2020).

In January 2020, the defendants in No. 19 Civ. 10650 moved to dismiss that case due to lack of subject matter jurisdiction.  No. 19 Civ. 10650, Doc. 17.  Buhannic has not filed an opposition to that motion, despite being warned by the Court in April 2020 that it would decide the motion on the defendants' papers only if he did not.  *Id.*, Doc. 27. Rather, on April 20, Buhannic sent a letter to Chief Judge Colleen McMahon of this District asking her to conduct an investigation into alleged collusion between this Court, Michael Bloomberg, and the Clerk of the Second Circuit, Catherine O'Hagan-Wolfe.  *Id.* Doc. 28.

Buhannic has filed three more lawsuits since then.  The first, No. 20 Civ. 3421, was filed on May 1, 2020 and repeats allegations made in No. 18 Civ. 5372, demanding information from TradingScreen and the inspection of its books.  That complaint, like the cases dismissed in September 2019 and No. 19 Civ. 10650, names Schroeder and Grandi as defendants.  The second, No. 20 Civ. 3759, filed on May 14, 2020, sues this Court and O'Hagan-Wolfe for violations of Buhannic's constitutional rights.  Judge Stanton dismissed the case on May 22 due to the judicial immunity enjoyed by this Court and O'Hagan-Wolfe.  *See* No. 20 Civ. 3759, Doc. 8.  The third, No. 20 Civ. 4671, was filed on June 16 and asserts wrongful termination claims duplicative of No. 18 Civ. 7997, also naming Schroeder and Grandi as defendants.  Buhannic filed each of these three lawsuits *in forma pauperis*.  Cases No. 20 Civ. 3421 and 7997 are subjects of this Opinion and Order.

## II.     MOTION TO RECUSE

A judge must recuse himself if his "impartiality might be reasonably questioned." *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir. 2014) (citing 28 U.S.C. § 455(a)).  Section 455(b) lists several additional circumstances necessitating removal, including, for example, when the judge has a personal bias in the proceeding or a financial interest in the proceeding or one of the parties.  The propriety of recusal is considered objectively, with courts asking, "[W]ould a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned?" *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).  If the answer to that question is "no," recusal is "prohibited."  *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).

Buhannic has provided no basis for a reasonable person to question this Court's impartiality.  He initially argues that this Court's service on a commission serving the City of New York creates an improper connection with former mayor Michael Bloomberg.  This argument has no merit.  First, Buhannic has presented no evidence beyond this Court's service on the commission for a bias of any kind towards Bloomberg.  Second, even if he had, neither Bloomberg nor his company are a party to the case in which Buhannic filed his motion, 19 Civ. 10650, or any of the cases reviewed by the Court in this Opinion and Order.  The sole relationship between Bloomberg and these cases is (1) Bloomberg LLP is allegedly a competitor of TradingScreen, the defendant in nearly all of these actions, and (2) a writer for Bloomberg News published an allegedly false story about Buhannic that factored into his termination as CEO in 2016.  Neither of these "connections" suggest that the former mayor of New York has any personal interest in the outcome of this and the related cases, much less a strong enough one that would create any doubt about this Court's impartiality.  *Cf. Oxman v. Drager*, No. 18 Civ. 687 (ALC), 2020 WL 4043136, at *4 (S.D.N.Y. Aug. 13, 2018) (finding that "conclusory claims" of interests by connected persons does not create any finding of impartiality in the presiding judge).

10

Buhannic next argues that this Court has acted with bias against him because he is *pro se* as compared against the counseled defendants, especially in light of the Court's September 2019 order dismissing Nos. 18 Civ. 5371, 5372, 7997, 9447, and 10170.  But, "[i]t is axiomatic that a district judge's prior decision averse to a [party] do not merit recusal."  *Weaver v. IndyMac Fed. Bank, FSB*, No. 09 Civ. 5091 (LAP), 2019 WL 6173789, at *1 (S.D.N.Y. Nov. 20, 2019).  Buhannic has pointed to no action by this Court that would indicate the sort of "deep-seated and unequivocal antagonism that would render fair judgment impossible."  *SEC v. Razmilovic*, 738 F.3d 14, 29–30 (2d Cir. 2013).  Without more, Buhannic's failure to convince the Court of the merits of his position cannot lead to an inference of partiality or bias on the part of the Court.

Finally, Buhannic argues that the delay in adjudicating his cases gives rise to an appearance of bias.  "While delay is regrettable, it is often unavoidable in the busy district courts of the Southern District of New York."  *Walker v. New York State Dept. of Correction and Community Supervision*, 18 Civ. 6082 (NSR), 2019 WL 624930, at *2 (S.D.N.Y. Feb. 14, 2019).  The Court has administered this case with the same care it gives its many other cases currently pending before it.  Any delay in adjudicating Buhannic's many allegations are not attributable to an animus held by the Court against this plaintiff.

According, the Court DENIES Buhannic's motion for the Court's recusal.  It now proceeds to the merits of the cases before it.

## III.  DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.

2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  Furthermore, this Court has an independent obligation to assure itself of its subject matter jurisdiction and may dismiss cases *sua sponte* if plaintiffs do not properly establish subject matter jurisdiction in their complaints.  *See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012).

As in the cases dismissed in September 2019, Buhannic only asserts diversity of citizenship under 28 U.S.C. § 1332 as the basis for this Court's jurisdiction.  As relevant here, 28 U.S.C. § 1332 provides that district courts shall have original jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000" and the action is between citizens of different states, or citizens of a state and citizens or subjects of a foreign state.  "However, diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens."  *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

The Court dismissed five actions in September 2019 because two of the defendants, Schroeder and Grandi, were citizens of foreign states — just like Buhannic. Both Schroeder and Grandi are defendants in each of Nos. 19 Civ. 10650, 20 Civ. 3421 and 20 Civ. 4671.  Accordingly, there is not complete diversity in any of these cases, the

Court GRANTS the defendants' motion to dismiss No. 19 Civ. 10650 and *sua sponte* DISMISSES Nos. 20 Civ. 3421 and 4671.[11]

## IV.     FILING INJUNCTION

Having disposed of these three cases, two of which were filed in the past three months, the Court now turns to the question of whether to enjoin Buhannic from filing further actions in this District without leave of this Court.

"The Supreme Court and numerous courts of appeals have recognized that courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *In re Martin-Tigona*, 9 F.3d 226, 228 (2d Cir. 1993). Indeed, courts "not only may but *should* protect [their] ability to carry out [their] constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23–24 (2d Cir. 1986) (emphasis added).

In determining whether Buhannic's behavior merits a filing injunction, the Court examines five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;
>
> (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?
>
> (3) whether the litigant is represented by counsel;
>
> (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) whether other sanctions would be adequate to protect the courts and other parties.

---

[11] Because the Court determines that it does not have subject matter jurisdiction over 19 Civ. 10650, it does not reach the alternative bases for dismiss put forward by the defendants, namely that the claims are subject to arbitration agreements.

*Safir,* 792 F.2d at 24.  Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

Each of these factors counsel in favor of an injunction.  First, Buhannic's litigation has evolved from a garden-variety disagreement regarding corporate governance and wrongful termination to an ever-expanding allegation of conspiracy and umbrage.  Defendants in these actions include not only TradingScreen and its affiliates, but also their outside counsel, the arbitrators of the AAA, the justice presiding over his case in New York, the employees of the First Department of the New York Supreme Court's Appellate Division, the Clerk of Court for the Second Circuit Court of Appeals, and even this very Court.  Anyone who crosses Buhannic in his quest for relief today is likely to become a defendant tomorrow.  Such behavior is the very definition of vexatious.

Furthermore, Buhannic's lawsuits are duplicative.  The three cases the Court dismisses in this Opinion and Order are near carbon copies of cases the Court dismissed in September 2019, which are in turn duplicative of the cases filed by Buhannic in New York Supreme Court.  Indeed, less than a month after the Court dismissed his cases because he named citizens of foreign states as defendants, Buhannic filed one case that named those same two citizens of foreign states as defendants.  And then he did it again six months after that.

*Second*, it is quite clear that Buhannic does not have any intention on molding his litigation strategy so that he has some chance of success.  In several of his actions before this Court, he has chosen to abandon his litigation even when the court gave him a chance to amend his claims.  Judge Gardephe allowed him the opportunity to amend his racketeering claims against his former attorneys, but he declined to file anything to further prosecute his lawsuit.  Buhannic has done much the same in his racketeering lawsuit against the AAA and TradingScreen's affiliates, having gone months without

14

amending his complaint after the Court granted him that opportunity.  He has exhibited the same behavior in the New York Supreme Court, choosing not to attend depositions and participate in discovery, which led to dismissal of his case.  Furthermore, his favored method of pushing litigation forward — filing new lawsuits — does not evince any ability to adapt his strategy to account for rulings of this Court or others; as mentioned above, he has made no effort to change his pleadings or claims to account for the deficiencies pointed out by the courts he appears before.  *See Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 715 (2d Cir. 2019), *cert. denied sub nom. Weisskopf v. Jewish Agency for Israel*, 140 S. Ct. 380 (2019) ("The dismissal of similar, if not identical, prior actions underscores that both [plaintiffs] had little, if any, good faith basis for believing they could prevail on their claims.")

*Third*, Buhannic's status as a *pro se* litigant do not grant him the "special solicitude" courts normally extend to plaintiffs proceeding without counsel.  *Eliahu*, 919 F.3d at 715.  In proceedings in New York Supreme Court and in front of the arbitration panel, Buhannic retained counsel — at least four sets of counsel.  According, this third factor weighs against Buhannic.  *See id.* (finding that third factor weighs against litigant who received the assistance of counsel at times throughout proceedings).

*Fourth*, Buhannic has caused TradingScreen, its affiliates, its counsel, at least two trial courts, and their staff great expense in adjudicating his duplicative claims.  Since his first lawsuit in federal court in October 2016, he has filed an average of one matter per quarter, each of which requires processing by the relevant clerk's staff, evaluation by defendants' counsel, and consideration by the presiding judge.  Rather than inching him closer to some relief, his actions have only served to cause his defendants to spend money in opposition to his allegations.  *See Eliahu*, 919 F.3d at 715.

*Fifth*, there are no other sanctions available that would protect the court and potential parties.  Indeed, Justice Friedman sanctioned Buhannic for his frivolous motions and dismissed his case for failure to prosecute, only for Buhannic to begin litigation in

this District and to sue Justice Friedman herself. Buhannic has had his opportunity to freely plead his case in federal court. Going forward, as regards his grievances related to his termination as TradingScreen CEO, he shall be ordered to seek this Court's leave before making further efforts.

## V.    CONCLUSION

For the foregoing reasons, Buhannic's motion for this Court to recuse itself in No. 19 Civ. 10650 is DENIED. The defendants' motions to dismiss that case is GRANTED. The Court additionally DISMISSES Nos. 20 Civ. 3421 and 20 Civ. 4671, *sua sponte*. Finally, the Court GRANTS defendants' motions for an anti-filing injunction and ORDERS as follows:

> Buhannic is barred from filing future actions in this District relating to, or arising from, his termination as CEO of TradingScreen, status as a director of TradingScreen, or ownership of shares in Trading-Screen without first obtaining leave to file from this Court. Buhannic may continue to prosecute any pending actions, and he may appeal this Opinion and Order.
>
> Any motion for leave to file must be captioned "Application Pursuant to Court Order Seeking Leave to File." Buhannic must attach a copy of his proposed complaint and attach a copy of this Opinion and Order with any such motion. The motion must be filed with the *Pro Se* Intake Unit of the Southern District.
>
> Should Buhannic violate this Opinion and Order and file an action without first obtaining leave to file, the action will be dismissed for failure to comply with this Opinion and Order and Buhannic may be subject to sanctions, including contempt.

*See Ranasinghe v. Kennell,* 16 Civ. 2170 (JMF), 2017 WL 384357 (S.D.N.Y. Jan. 25, 2017), *aff'd*, 718 F. App'x 82 (2d Cir. 2018).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to terminate the motions, Docs. 13

and 17 in 19 Civ. 10650, and close the following cases:  19 Civ. 10650, 20 Civ. 3421, and 20 Civ. 4671.

It is SO ORDERED.

Dated:   July 20, 2020
         New York, New York

_____
     EDGARDO RAMOS, U.S.D.J.